**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

| | | |
|---|---|---|
| CRYSTAL TUGGLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:18-cv-04107-NKL |
| | ) | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION | ) ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Plaintiff Crystal Tuggle appeals the Commissioner of Social Security's final decision denying her application for disability insurance benefits and supplemental security income under Titles II and Title XVI of the Social Security Act. For the reasons set forth below, the decision is affirmed.

**I.   Background**

Tuggle alleges that she became disabled on March 13, 2014 due to lower extremity edema, depression, migraines, fibromyalgia, tachycardia, hemachromatosis, end stage liver disease, kidney failure, NASH, urinary incontinence, severe low back and cervical pain, IBS, and sleep apnea. Tr. 77–78. She filed her initial applications for disability and supplemental security income benefits on January 12, 2015. Tr. 219. Her application was denied on May 29, 2015. Tr. 111. Tuggle filed an appeal on June 14, 2015. Tr. 118. On August 31, 2016, Tuggle appeared and testified at a hearing before an administrative law judge ("ALJ"). Tr. 10. A supplemental hearing was held on May 25, 2017. *Id.*

On July 26, 2017, the ALJ issued an unfavorable decision. Tr. 7–24. The ALJ determined that Tuggle suffered from severe impairments of liver disease, chronic pain syndrome, obstructive

sleep apnea, obesity, headaches, and depression. Tr. 12. However, the ALJ found that Tuggle did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 13. The ALJ found that Tuggle had the residual functional capacity ("RFC") to perform sedentary work with the following limitations:

> [T]he claimant can lift and carry ten pounds occasionally and five pounds frequently. The claimant can sit six hours in an eight-hour workday and stand and/or walk two hours in an eight-hour workday. Additionally, the claimant cannot climb, kneel, crouch, or crawl and can occasionally stoop. The claimant can frequently handle and finger, must avoid hazards such as dangerous machinery and unprotected heights. Furthermore, the claimant is capable of simple routine tasks, occasional interaction with supervisors and coworkers, but no interaction with a public work environment.

Tr. 14. Based on testimony from a vocational expert, the ALJ concluded that Tuggle could perform jobs existing in significant numbers in the national economy, including work as a patcher/household appliance industry (DOT 723.687-010), lens inserter/optical goods (DOT 713.687-026), or egg processor/pharmaceutical industry (DOT 559.687-034), and therefore is not disabled. Tr. 17–18.

The Social Security Administration's Appeals Council denied Tuggle's request for review on March 27, 2018. Tr. 1. Tuggle has exhausted her administrative remedies, and now appeals the ALJ's July 2017 decision, which constitutes the final decision of the Commissioner subject to judicial review.

## II.    Legal Standard

In reviewing the Commissioner's denial of benefits, the Court considers whether "substantial evidence in the record as a whole supports the ALJ's decision." *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). "Substantial evidence" is less than a preponderance but enough that a reasonable mind would find it adequate to support the ALJ's conclusion. *Id*. The Court must

2

consider evidence that both supports and detracts from the ALJ's decision. *Id.* "[A]s long as substantial evidence in the record supports the Commissioner's decision, [the Court] may not reverse it." *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015) (quotation omitted); *Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017).

## III. Discussion

Tuggle argues that the ALJ committed legal error in his analysis at steps three and four of the sequential evaluation process, because the ALJ failed to consider whether her migraine headaches equal an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1 and improperly discredited her statements concerning the intensity, persistence, and limiting effects of her migraines and fatigue in formulating her RFC.

### A. Step Three

At step three of the sequential evaluation process, an ALJ is required to analyze a claimant's medically determinable impairments to determine whether they meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1. 20 C.F.R. § 404.1520(a)(4)(iii); *see also Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."). There is no listing that pertains specifically to migraine headaches. Accordingly, the ALJ did not err in determining that Tuggle's migraine headaches did not meet a listing. But Tuggle contends that the ALJ committed legal error by failing to "consider whether [her] headaches equaled Listing 11.03." Doc. 17 (Plaintiff's Brief), p. 7. SSA National Q&A Tracking number 09-036 (posted Dec. 15, 2009) identifies listing 11.03 (Epilepsy – nonconvulsive epilepsy) as the "most analogous listing for considering medical equivalence" of migraine headaches. SSA National Q&A 09-036, p. 3

3

available at http://www.paletta.org/wp-content/uploads/2018/02/SSA-QA_09-036.pdf (last visited May 3, 2019).

However, on July 1, 2016, the Social Security Administration ("SSA") revised the listings criteria used to evaluate disability claims involving neurological disorders, including section 11.00, effective September 29, 2016. 81 Fed. Reg. 43048-01. The SSA explained that it will use the new listings "on and after their effective date in any case in which [it makes] a determination or decision" and "that Federal courts will review the Commissioner's final decisions using the rule[s] that were in effect at the time [it] issued the decisions." *Id.* at n.6. Under the revised listings, which were in effect at the time of the ALJ's decision, 11.03 no longer exists as a substantive listing. Tuggle identifies no Eighth Circuit authority requiring consideration of an inactive listing, Listing 11.03, or any other analogous listing to determine medical equivalency for a claimant suffering from migraines.

Additionally, remand is not required when an ALJ fails to explain why an impairment does not equal a listed impairment "as long as the overall conclusion is supported by the record." *Boettcher v. Astrue*, 652 F.3d 860, 863, 864 (8th Cir. 2011) (reversing district court with direction to affirm the Commissioner's decision despite ALJ's failure to explain why claimant's back pain did not equal one of the listed impairments because "ample evidence exist[ed] in the record" to support the ALJ's ultimate determination). Because the Court finds that substantial evidence supports the ALJ's findings regarding the limiting effects of Tuggle's migraines, as set forth in further detail below, the Court concludes that the ALJ's failure to consider whether Tuggle's migraines medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1, was at most harmless error.

Thus, the Court finds no reversible error at step three.

## B. Step Four

Tuggle argues that substantial evidence does not support the RFC because the ALJ "discredit[ed] [her] statements concerning the intensity, persistence and limiting effects of her symptoms from migraine headaches" without providing sufficient explanation. Doc. 17, p. 4. However, "[s]ubjective complaints may be discounted if there are inconsistencies in the evidence as a whole." *Igo v. Colvin*, 839 F.3d 724, 731 (8th Cir. 2016) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)). "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Id.* Thus, the Court will "defer to the ALJ's determinations regarding the credibility of witnesses so long as such determinations are supported by good reasons and substantial evidence." *Id.* at 730 (quotations omitted). An ALJ may consider inconsistencies between a claimant's allegations and the medical records when making credibility determinations. *See Bryant v. Colvin*, 861 F.3d 779, 783 (8th Cir. 2017); *see also Milam*, 794 F.3d at 985 (finding ALJ properly considered claimant's conservative treatment in reaching adverse credibility determination).

Here, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record." Tr. 15. Specifically, the ALJ explained that "treatment notes indicate that [Tuggle's] migraine headaches were treated conservatively on medications." Tr. 16, 539, 556. Both Tuggle's medical records and hearing testimony regarding treatment support the ALJ's determination. In April 2015, Tuggle told Dr. Alexander that she had suffered from migraines since 2002 but denied receiving any treatment for that condition. Tr. 387. Although Tuggle testified during her hearing before the ALJ that she has to isolate herself in a dark room "two to three times a week" to deal with her migraines, Tr. 41, she also testified that her migraine-

5

related treatment was limited to medication management from her primary care provider, from the beginning of the relevant period through the month prior to her administrative hearing. Tr. 44.

Despite these noted inconsistencies, Tuggle contends that the ALJ's findings are "not completely accurate" because they do not account for all of the evidence in the record that support her statements. Doc. 17, p. 4. Specifically, Tuggle cites to a treatment note from December 6, 2016 indicating that she was administered occipital nerve blocks to treat her headache, Tr. 608, and Dr. Anigbogu's testimony that it is "possible" for a person to be absent from or unable to work due to migraine symptoms, Tr. 72. However, "an ALJ is not required to discuss every piece of evidence submitted," and "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). Moreover, in context, Dr. Anigbogu's testimony expresses the opinion that Tuggle's migraines should be thought of as part of her chronic-pain syndrome, the totality of which led Dr. Anigbogu to restrict her to light work. Tr. 72–73. Dr. Anigbogu reached that conclusion based on a review of Tuggle's entire record, including the December 6, 2016 treatment note, his experience as a pain-management specialist, the fact that Tuggle did not appear to be "on any strong medications," and his knowledge of many patients who require treatment for migraines and nonetheless maintain full-time employment. Tr. 73. His opinion is further supported by Tuggle's own assertions that she has suffered from migraines since 2002, did not receive any treatment for her migraines, Tr. 387, and continued to work in spite of them until 2014. The ALJ was permitted to rely upon the opinion of the non-examining medical expert, Dr. Anigbogu, to the extent that it was consistent with other reliable evidence. *See, e.g.*, *Turpin v. Colvin*, 750 F.3d 989, 993–4 (8th Cir. 2014). Thus, the Court finds

that substantial evidence supports the ALJ's determination; the ALJ acted within his discretion when he discounted Tuggle's subjective complaints as inconsistent with the evidence as a whole.

Tuggle also asserts, without citation to authority, that the ALJ's "failure to evaluate the effects of fatigue on [her] RFC is reversible error." Doc. 17, p. 12. Tuggle contends that she "need[s] unscheduled breaks during the workday to rest or sleep" due to fatigue associated with her sleep apnea and liver disease, and that "this would cause her to be off task at least twenty percent (20%) of the workday." *Id.* at 10. However, Tuggle fails to identify evidence in the record to support these contentions beyond her general diagnoses of sleep apnea and chronic liver disease. The ALJ properly considered Tuggle's diagnoses of sleep apnea and chronic liver disease and associated fatigue in formulating the RFC, *see* Tr. 14–15, but found that her statements were "not entirely consistent with the medical evidence and other evidence in the record," Tr. 15, including her own testimony and opinion evidence from a medical expert that she could meet the demands of sedentary work, Tr. 14, 16, 522.

Given Tuggle's failure to identify legal error on the part of the ALJ, and the deference granted to the findings and conclusions of the SSA, *see Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015), the Court affirms the determination of the ALJ.

## IV. Conclusion

For these reasons, the Commissioner's determination is affirmed.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: May 3, 2019
Jefferson City, Missouri